IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **KENYON DEVON AMES,** | * | |
| Plaintiff, | * | |
| v. | * | Civ. No. DLB-25-1585 |
| **ENTERPRISE RAC COMPANY OF MARYLAND LLC,** | * | |
| | * | |
| Defendant. | * | |

**MEMORANDUM OPINION**

Kenyon Devon Ames, who is proceeding without counsel, filed this action against his former employer Enterprise RAC Company of Maryland LLC ("Enterprise"), alleging that Enterprise retaliated against him for reporting workplace safety concerns, in violation of the Occupational Safety and Health Act of 1970 ("OSHA"), 29 U.S.C. § 651 *et seq.*; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; and Maryland state law and that Enterprise discriminated against him in violation of Title VII, 42 U.S.C. § 1981, and the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't § 20-601 *et seq.* Enterprise has moved to dismiss Ames's complaint for failure to state a claim. For the reasons stated below, the motion is granted.

I. **Background**

The following facts are from Ames's complaint.

Ames is a Black man. ECF 4, at 2. He was employed by Enterprise as a "DOT driver" from December 2022 until January 17, 2025. *Id.* He states that, during his employment, he "consistently performed his duties in a professional manner." *Id.* at 3.

In July 2024, Ames raised concerns within Enterprise about the lack of "height stickers" on DOT trucks. *Id.* Ames states that he "fear[ed] potential accidents with low-clearance bridges." *Id.* Ames's supervisor nonetheless instructed him to "proceed with the vehicle delivery despite safety concerns" and told him to "estimate the height using a shell gas station." *Id.* Ames then escalated the matter to human resources, but after an investigation, Ames's concerns were deemed unfounded. *Id.*

Ames then filed reports concerning this safety issue with the Occupational Safety and Health Administration, Maryland Occupational Safety and Health, and the Virginia State Police. *Id.* All three agencies "dismissed the concerns but confirmed [Ames's] right to report safety issues without retaliation." *Id.*

Ames states that after he made these reports, Enterprise began to scrutinize his performance more closely and to "seek[ ] grounds for termination in retaliation for raising safety concerns." *Id.*

In December 2024, Ames received a positive performance review that did not mention any "behavioral issues." *Id.* at 5.

On December 19, 2024, Ames rented a vehicle from Enterprise, which he retained until January 2, 2025. *Id.* at 3. Ames prepaid roughly $517.00 to rent the vehicle, including a $300.00 security deposit. *Id.* On December 30, the "Maryland [a]rea [m]anager" called Ames and "demand[ed] that he update the payment or return the vehicle." *Id.* at 4. Ames says that he "inquired about the policy requiring the maintenance of the deposit but received no clear response." *Id.*

Subsequently, Ames had a phone call with Lindsay Ross, a "[m]anager-in-[t]raining" with Enterprise. *Id.* Ross is a white woman. *Id.* at 6. Ames states that during this call, he "used profanity out of frustration." *Id.* at 4. After the call, Ross texted Ames, and Ames responded, apologizing

2

for his use of profanity. *Id.* In response, Ross sent Ames a text message in which she called him an "ass." *Id.*

On January 17, 2025, Ames was fired for "improper employee conduct." *Id.* Ames's termination letter informed him that he was being fired because he used profanity in his phone call with Ross and because he allegedly had used profanity in his conversation with the Maryland area manager. *Id.* Ames denies the latter allegation. *Id.* His termination letter also stated that there were "additional instances in which [he] exhibited uncooperative, unprofessional, and unsettling/escalated behavior." *Id.* at 5. Ames states that he "was not informed of any internal investigation." *Id.* at 4. He further states that if he had engaged in such behavior, it "would have led to automatic termination" because Maryland is "an at will state." *Id.* at 5.

Also on January 17, Ames sent an email to an individual named Mark Sunderland informing him that Ross also had used profanity in her text exchange with him. *Id.* at 4. Ross, however, did not face any disciplinary action for her use of profanity. *Id.*

Ames originally filed this action in the Circuit Court for Montgomery County, Maryland. ECF 1-3, at 2. On May 16, 2025, Enterprise removed the case to federal court on the basis of diversity and federal-question jurisdiction. ECF 1. In his complaint, Ames alleges that he was terminated in retaliation for reporting safety concerns, in violation of OSHA, Title VII, and Maryland state law, and that he was discriminated against on the basis of his race and gender when he was fired for using profanity, in violation of Title VII, § 1981, and MFEPA. He seeks $300,000.00 in punitive damages.

On May 23, 2025, Enterprise filed a motion to dismiss for failure to state a claim. ECF 10. Ames opposes the motion, ECF 13, and Enterprise has filed a reply, ECF 15. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025).

**II.   Standard of Review**

Under Rule 12(b)(6), a party may seek dismissal for failure "to state a claim upon which relief can be granted." *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (quoting Fed. R. Civ. P. 12(b)(6)). To survive the challenge, the opposing party must have pleaded facts demonstrating it has a plausible right to relief from the court. *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plausible claim is more than merely conceivable or speculative. *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022). The allegations must show there is "more than a sheer possibility that the defendant has acted unlawfully." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678). But the claim does not need to be probable, and the pleader need not show "that alternative explanations are less likely" than their theory. *Jesus Christ Is the Answer Ministries, Inc. v. Baltimore Cnty.*, 915 F.3d 256, 263 (4th Cir. 2019) (quoting *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015)).

When ruling on a Rule 12(b)(6) motion, the court must accept the allegations as true and "draw all reasonable inferences in favor of" the pleader. *Williams v. Kincaid*, 45 F.4th 759, 765 (4th Cir. 2022) (quoting *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016)). But the court does not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (quoting *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013)). Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 212 (4th Cir. 2019)). The court "does not resolve contests surrounding facts, the merits of a claim, or

the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).

The court's review of a Rule 12(b)(6) motion typically is limited to the pleadings, documents attached to the complaint, and the parties' briefs. *See* Fed. R. Civ. P. 12(b)(6), 12(d); *see also* Fed. R. Civ. P. 10(c). The court also may consider judicially noticed facts and documents integral to and explicitly relied on in the complaint when their authenticity is not disputed. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015); Fed. R. Evid. 201(b).

Ames does not have counsel. "[P]ro se filings are 'h[e]ld to less stringent standards than formal pleadings drafted by lawyers.'" *Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Accordingly, the court must construe pro se pleadings liberally. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020). But "liberal construction does not require [the court] to attempt to 'discern the unexpressed intent of the plaintiff[;]'" the court need only "determine the actual meaning of the words used in the complaint." *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (quoting *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006) (en banc)). Thus, a pro se complaint "still 'must contain "enough facts to state a claim for relief that is plausible on its face."'" *Thomas v. Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) (quoting *King*, 825 F.3d at 214 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).

**III.    Discussion**

Enterprise argues that Ames's complaint should be dismissed for failure to state a claim. Specifically, it argues that Ames lacks a private right of action under OSHA for retaliation; that Ames fails to allege that he engaged in protected activity for purposes of a Title VII retaliation claim; that Ames has failed to exhaust his administrative remedies with respect to his Title VII and

5

MFEPA discrimination claims; and regardless, that Ames fails to allege sufficient facts to state a claim of discrimination under Title VII, § 1981, or MFEPA. In response, Ames concedes that he did not file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and thus requests that his Title VII and § 1981 discrimination claims be dismissed. ECF 13, at 3. But Ames insists he has stated a retaliation claim under Maryland common law. *Id.* at 3, 9–10.

In light of Ames's concession that he did not file a charge of discrimination with the EEOC, the Court will grant, as unopposed, Enterprise's motion to dismiss Ames's Title VII race and gender discrimination claims on the basis that those claims are unexhausted. *See, e.g.*, *Sloop v. Mem'l Mission Hosp., Inc.*, 198 F.3d 147, 148 (4th Cir. 1999). Ames's Title VII discrimination claims are thus dismissed without prejudice.

Enterprise does not, however, seek to dismiss Ames's § 1981 claims as unexhausted, and the Court will not rely on Ames's concession as a basis for dismissing those claims. Ames appears only to concede dismissal of his § 1981 claims based on a mistaken belief that § 1981 claims have an exhaustion requirement, which they do not. *See, e.g.*, *Lilly v. Harris-Teeter Supermarket*, 720 F.2d 326, 334 (4th Cir. 1983) ("exhaustion of EEOC remedies is not a prerequisite to filing suit" under § 1981); *Sewell v. Strayer Univ.*, 956 F. Supp. 2d 658, 673 (D. Md. 2013) ("Section 1981 claims are not subject to the same exhaustion and timeliness requirements as those asserted pursuant to Title VII."); *see also Francis v. Maryland*, No. ELH-21-1365, 2023 WL 2456553, at *30 (D. Md. Mar. 10, 2023) (declining to rely on plaintiff's concession that claim should be dismissed when that "concession appears to be based on misapprehension of the law").

Enterprise also argues that Ames's MFEPA claims should be dismissed for failure to exhaust. The Court will not dismiss the MFEPA claims on that basis. In general, an action may be

6

dismissed for failure to exhaust on a Rule 12(b)(6) motion "only in the 'relatively rare circumstances' when 'all facts necessary to the affirmative defense [of exhaustion] clearly appear on the face of the complaint.'" *L.N.P. v. Kijakazi*, 64 F.4th 577, 586 (4th Cir. 2023) (quoting *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc)). Here, Ames does not allege any facts in his complaint that would indicate one way or the other whether he exhausted his administrative remedies with respect to his MFEPA claims. And although Ames concedes in his opposition that he did not file a charge of discrimination with the *EEOC*, a plaintiff also may exhaust their administrative remedies under MFEPA by filing a complaint with the Maryland Commission on Civil Rights or with a "local human relations commission." *See* State Gov't § 20-1004(a), (c). Ames does not concede that he did not file a complaint through either of those channels. Thus, it would be premature to dismiss Ames's MFEPA claims for failure to exhaust at this juncture.

Accordingly, the Court addresses the following claims: (1) Ames's OSHA retaliation claim, (2) his Title VII retaliation claim, (3) his § 1981 racial discrimination claim, and (4) his state law claims.

### A. OSHA Retaliation Claim

Enterprise argues that Ames's OSHA retaliation claim should be dismissed because OSHA does not create a private right of action. Ames does not address this argument in his opposition. The Court agrees with Enterprise.

Congress enacted OSHA "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources[.]" 29 U.S.C. § 651(b). As relevant here, OSHA prohibits employers from "discharg[ing] or in any manner discriminat[ing] against any employee" on the basis that the employee "has filed any

complaint or instituted or caused to be instituted any proceeding under or related to" the law. *Id.* § 660(c)(1). It further provides that "[a]ny employee who believes that [they have] been discharged or otherwise discriminated against by any person in violation of this subsection" may file a complaint with the Secretary of Labor, who in turn, after conducting an investigation, "shall bring an action in any appropriate United States district court" if she determines that OSHA's anti-retaliation provision has been violated. *Id.* § 660(c)(2).

The Fourth Circuit and courts in this district have consistently concluded that OSHA does not create a private right of action for individuals to enforce its provisions. *See, e.g.*, *Scarborough v. Aegis Commc'ns Grp., Inc.*, No. 99-2671, 217 F.3d 840, 2000 WL 790965, at *1 (4th Cir. Jun. 20, 2000) (unpublished table disposition); *Rosen v. Prince George's Bd. of Educ.*, No. 95-1262, 81 F.3d 151, 1996 WL 128420, at *1 (unpublished table disposition); *Burnett v. BJ's Wholesale Club*, 722 F. Supp. 3d 566, 580 (D. Md. 2024), *aff'd*, No. 24-1228, 2024 WL 3042902 (4th Cir. Jun. 18, 2024); *see also Doe I v. Scalia*, 58 F.4th 708, 711 (3d Cir. 2023) ("In general, [the Occupational Safety and Health Administration], rather than private litigants, is responsible for assuring workplace safety. In furtherance of that objective, the [Occupational Safety and Health] Act funnels safety grievances through [the Occupational Safety and Health Administration's] administrative process."). This Court follows suit. Because OSHA does not create a private right of action, Ames's OSHA retaliation claim must be dismissed with prejudice.

### B. Title VII Retaliation Claim

Enterprise next argues that Ames fails to state a claim for retaliation under Title VII because he does not allege that he engaged in protected activity under the statute. Ames, again, does not address this argument in his opposition. The Court agrees with Enterprise.

Title VII states that an employer may not "discriminate against any of [its] employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). To state a claim of retaliation under Title VII, a plaintiff "must 'allege[ ] facts supporting a plausible inference that [the employer took an adverse employment action against the plaintiff] because of [the plaintiff's] protected activity.'" *Barbour v. Garland*, 105 F.4th 579, 590 (4th Cir. 2024) (noting that, following *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002), the allegations in a Title VII retaliation complaint need not establish a prima facie case to survive a motion to dismiss) (quoting *Holloway*, 32 F.4th at 300). For purposes of a Title VII retaliation claim, "[p]rotected activity . . . includes complaints of discrimination based upon race, color, religion, sex or national origin" as well as "an employee's opposition to what he or she believes is an unlawful employment practice." *Menk v. MITRE Corp.*, 713 F. Supp. 3d 113, 150 (D. Md. 2024) (quoting *Landino v. Sapp*, 520 F. App'x 195, 198 (4th Cir. 2013), and then quoting *Bowman v. Balt. City Bd. of Sch. Comm'rs*, 173 F. Supp. 3d 242, 248 (D. Md. 2016)). "Title VII is not a general bad acts statute, however, and it does not prohibit private employers from retaliating against an employee based on [their] opposition to" practices outside the statute's ambit. *Bonds v. Leavitt*, 629 F.3d 369, 384 (4th Cir. 2011).

Ames does not allege that Enterprise retaliated against him because he complained about discrimination based on a protected trait or an unlawful employment practice. Rather, Ames alleges that Enterprise retaliated against him because he "report[ed] workplace safety concerns internally and to outside agencies." ECF 4, at 5. Reporting workplace safety concerns is not protected activity under Title VII because "unsafe working conditions are not made unlawful under

9

Title VII." *See Muller v. Westinghouse Elec. Co., LLC, LP*, Civ. No. 3:20-cv-1094-SAL-KDW, 2022 WL 17345480, at *17 (D.S.C. Oct. 28, 2022) (quoting *Rodriguez v. Beechmont Bus Serv. Inc.*, 173 F. Supp. 2d 139, 150 (S.D.N.Y. 2001)), *R&R adopted as modified by* 2022 WL 17343484 (D.S.C. Nov. 30, 2022); *see also, e.g.*, *Henderson v. QSR Hosp. LLC*, No. 1:20CV44, 2020 WL 3415642, at *3 (M.D.N.C. Jun. 22, 2020); *Gee v. Carilion Clinic*, Civ. No. 7:23-cv-00070, 2024 WL 4182705, at *6 (W.D. Va. Sept. 13, 2024); *Mayers v. Shaw Indus.*, Civ. No. 3:09-2365-CMC-JRM, 2010 WL 5158418, at *4 (D.S.C. Nov. 23, 2010), *R&R adopted by* 2010 WL 5158415 (D.S.C. Dec. 14, 2010). Because Ames fails to allege that he engaged in protected activity, he has not stated a retaliation claim under Title VII. This claim is dismissed without prejudice.

### C. Section 1981 Racial Discrimination Claim

Enterprise also argues that Ames fails to state a claim for racial discrimination under § 1981. The Court agrees.

Section 1981 "prohibits racial discrimination in the making and enforcement of private contracts." *Runyon v. McCrary*, 427 U.S. 160, 168 (1976). To state a claim for a violation of § 1981, a plaintiff must plausibly allege facts from which the court can reasonably infer "both that the defendant intended to discriminate on the basis of race, and that the discrimination interfered with a contractual interest." *Nadendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022) (quoting *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006)).[1] The plaintiff also must sufficiently allege that "the interference with a contractual interest would not have happened but

---

[1] To the extent that Ames asserts that Enterprise violated § 1981 by discriminating against him on the basis of his gender, his claim fails because gender-based discrimination claims are not cognizable under § 1981. *See Runyon*, 427 U.S. at 167 ("[These cases] do not present any question of the right of a private school to limit its student body to boys, to girls, or to adherents of a particular religious faith, since . . . [§] 1981 *is in no way addressed to such categories of selectivity*.") (emphasis added). Any § 1981 claim for gender-based discrimination is dismissed with prejudice.

10

for the plaintiff's race." *Id.* (citing *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020)). Section 1981 provides a vehicle through which a plaintiff may challenge an adverse employment action as racially discriminatory. *See, e.g.*, *Giles v. Nat'l R.R. Passenger Corp.*, 59 F.4th 696, 703–04 (4th Cir. 2023).

Ames alleges that Enterprise fired him because he is Black. In support of this claim of discrimination, Ames cites a comparator, Ross, a white employee who Ames says also used profanity but was not fired. *See* ECF 4, at 6. When, as here, a plaintiff claims "discrimination in the enforcement of employee disciplinary measures by reference to a comparator," they must allege that "(1) [they are] a member of a protected class, (2) [their] prohibited conduct was comparable in seriousness to the misconduct of employees outside the protected class, and (3) the disciplinary measures enforced against [them] were more severe than those enforced against the other employees." *Seabrook v. Driscoll*, 148 F.4th 264, 270 (4th Cir. 2025). While the plaintiff "need not plead facts sufficient to establish a prima facie case of race-based discrimination to survive a motion to dismiss," *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017), "[w]hen a plaintiff offers a comparator, the plausibility of [their] claim" nonetheless "depends upon whether that comparator is similarly situated," *Seabrook*, 148 F.4th at 271.[2] A similarly situated employee is one who "dealt with the same supervisor, [was] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Haynes v. Waste*

---

[2] *Seabrook* involved a motion to dismiss a discrimination claim brought under Title VII, not § 1981. 148 F.4th at 270. The Court nonetheless considers *Seabrook* instructive because the elements of an employment discrimination claim under Title VII and § 1981 are identical. *See, e.g.*, *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457–58 (4th Cir. 1989); *Bing*, 959 F.3d at 616 n.8.

*Connections, Inc.*, 922 F.3d 219, 223–24 (4th Cir. 2019) (quoting *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010)).

Ames identifies Ross as a comparator but does not allege facts from which the Court can plausibly infer that he and Ross were similarly situated. By Ames's own allegations, he and Ross had different positions at Enterprise. Ames was a driver, and Ross was a manager-in-training. Ames does not allege that they worked under the same supervisor or were subject to the same standards of conduct. *See, e.g.*, *Seabrook*, 148 F.4th at 271 (plaintiff's allegations about proffered comparators were insufficient to state a Title VII claim where, among other things, both comparators worked for different divisions of the Army than the plaintiff and the plaintiff's "complaint and attachments [were] silent regarding their jobs, whether their roles were similar to her leadership position, and the identity of the supervisors who disciplined them"). Further, Ames does not sufficiently allege that he and Ross engaged in the same conduct. While Ames alleges that both used profanity—Ross called him an "ass" in a text—Ames does not specify the profanity that he used. Without knowing the nature of the profane language that Ames used during his call with Ross, the Court cannot determine whether Ross's conduct was comparably serious to Ames's conduct. *See, e.g.*, *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 189, 191 (4th Cir. 2010) (Black plaintiff fired for "steer[ing] contracts to vendors in which [he] had an interest" failed to plausibly allege that his white supervisor was similarly situated because, although plaintiff alleged the supervisor also had "outside business involvements," he did not assert that these involvements "were improper, let alone that any impropriety was comparable to the acts [the plaintiff] was alleged to have committed"), *aff'd*, 566 U.S. 30 (2012).

Ames chose to rely on a comparator to support his racial discrimination claim. To defeat the motion to dismiss this claim, Ames had to allege a similarly situated comparator. He has not

met that burden. Thus, Ames does not sufficiently allege that he was terminated because of his race in violation of § 1981. His § 1981 racial discrimination claim is dismissed without prejudice.

### D. State Law Claims

Ames also asserts state law claims for race and gender discrimination in violation of MFEPA and for wrongful discharge in violation of public policy. The same standard for § 1981 claims applies to MFEPA claims. *See, e.g.*, *Magassouba v. Prince George's Cnty.*, 773 F. Supp. 3d 196, 211 (D. Md. 2025); *Haynes v. G & R Trucking, Inc.*, No. TJS-19-1223, 2020 WL 5759761, at *1 n.3 (D. Md. Sept. 28, 2020); *Downer v. Prince George's Cnty. Bd. of Educ.*, No. BAH-21-1618, 2024 WL 3277563, at *6–7 (D. Md. Jul. 2, 2024), *aff'd sub nom. Downer v. Prince George's Cnty. Pub. Schs.*, No. 24-1704, 2025 WL 1927546 (4th Cir. Jul. 14, 2025). In particular, a plaintiff asserting an MFEPA claim of race or gender discrimination by reference to a comparator must plausibly allege that they were treated "less favorabl[y] . . . than similarly situated employees outside the[ir] protected class." *See Allen v. Discovery Commc'ns, LLC*, No. PWG-15-1817, 2016 WL 5404558, at *5 (D. Md. Sept. 28, 2016) (quoting *Linton v. Johns Hopkins Univ. Applied Physics Lab'y, LLC*, No. JKB-10-276, 2011 WL 4549177, at *5 (D. Md. Sept. 28, 2011)); *see also Dillard v. Am. Ass'n of State Highway & Transp. Offs.*, No. TJS-24-1154, 2024 WL 4544555, at *2 (D. Md. Oct. 22, 2024). Ames's MFEPA race and gender discrimination claims fail because, as with his § 1981 race discrimination claim, he fails to plausibly allege that Ross was similarly situated to him. The MFEPA claims are dismissed without prejudice.

Ames's claim for wrongful discharge in violation of public policy also is not adequately pled. In his complaint, Ames simply asserts that his termination was retaliatory in violation of "Maryland state law." ECF 4, at 5. It is only in his opposition to Enterprise's motion to dismiss that Ames clearly specifies the tort he alleges. *See* ECF 13, at 3. He cannot amend his complaint

13

through his opposition. *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013). But even construing his complaint liberally to assert a wrongful discharge claim, the Court finds that Ames fails to allege sufficient facts to survive Enterprise's motion to dismiss. Under Maryland law, "[a]n employee who asserts that [they were] wrongfully discharged must 'specifically identify the clear mandate of Maryland public policy that was violated by [their] termination.'" *Terry v. Legato Sys., Inc.*, 241 F. Supp. 2d 566, 569 (D. Md. 2003) (quoting *Szaller v. Am. Nat'l Red Cross*, 293 F.3d 148, 151 (4th Cir. 2002)). This policy mandate must derive from "a preexisting, unambiguous, and particularized pronouncement, by constitution, enactment, or prior judicial decision, directing, prohibiting, or protecting the conduct in question so as to make the public policy on the relevant topic not a matter of conjecture or interpretation." *Szaller*, 293 F.3d at 151 (quoting *Porterfield v. Mascari II, Inc.*, 788 A.2d 242, 245 (Md. Ct. Spec. App. 2002), *aff'd*, 823 A.2d 590 (Md. 2003)). Nowhere in his complaint does Ames identify a clear Maryland public policy that Enterprise violated by terminating him.[3] Accordingly, Ames fails to state a claim for wrongful discharge. This claim is dismissed without prejudice.

IV.   **Conclusion**

Enterprise's motion to dismiss is granted. A separate Order follows.

Date: November 25, 2025

Deborah L. Boardman
United States District Judge

---

[3] In his opposition to Enterprise's motion, Ames argues that there is a clear Maryland public policy in favor of whistleblowing on issues of public safety. Ames does not identify this policy in his complaint, however, and "[i]t is well-established that parties cannot amend their complaints through briefing or oral advocacy." *S. Walk*, 713 F.3d at 184. Accordingly, the Court does not consider whether such a public policy exists for purposes of ruling on Enterprise's motion to dismiss.